## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

RUSSELL LAWSON, JR.; BRIAN BURNS; CHRISTOPHER PENTA; SECOND AMENDMENT FOUNDATION, INC.; and GUN OWNERS' ACTION LEAGUE,

          *Plaintiffs,*

 v.

ANDREA JOY CAMPBELL, in her official capacity as the Massachusetts Attorney General; SUSAN TERREY, in her official capacity as the Interim Secretary of the Executive Office of Public Safety and Security of Massachusetts;[1] GEOFFREY D. NOBLE, in his official capacity as the Superintendent of the Massachusetts State Police; and JAMISON R. GAGNON, in his official capacity as the Commissioner of the Massachusetts Department of Criminal Justice Information Services,

          *Defendants.*

DOCKET NO. 1:25-cv-12268

Chief Judge Denise J. Casper

Motion for leave to file 26-page memorandum pending

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Konstantin Tretyakov (BBO No. 698430)
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2827
konstantin.n.tretyakov@mass.gov

Date: November 7, 2025

---

[1]    On September 30, 2025, Terrence Reidy retired from the position of the Secretary of the Executive Office of Public Safety and Security, and Susan Terrey was appointed as the Interim Secretary. Accordingly, Ms. Terrey automatically substituted Mr. Reidy in her official capacity as a defendant in this matter. Fed. R. Civ. P. 25(d).

i

TABLE OF CONTENTS

INTRODUCTION........................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ..................................................... 2

STATEMENT OF FACTS.............................................................................................. 6

ARGUMENT ............................................................................................................... 10

   I.   THIS COURT LACKS SUBJECT-MATTER JURISDICTION AND THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1). ................................................. 10

      1.  Standing, Mootness, and Ripeness........................................................... 10

      2.  Plaintiffs Lack Standing to Bring a Facial Challenge Against the "Shall-Issue" Licensing Regime in Massachusetts. ........................................ 12

      3.  Plaintiffs Lack Standing to Bring an As-Applied Challenge................... 14

   II.  PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM, AND THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6). ...................................................... 15

      1.  Under the Second Amendment, Plaintiffs Failed to Rebut the Presumption of Constitutionality of the Massachusetts "Shall-Issue" Firearm Licensing Regime.................................................................................................. 16

           A. Presumptive Constitutionality of the Massachusetts Licensing Regime. .......... 16

           B. Plaintiffs' Facial Second Amendment Challenges to the Massachusetts Licensing Regime Fail as a Matter of Law. ....................................... 17

           C. Plaintiff's As-Applied Second Amendment Challenge Also Fails as a Matter of Law Because the Alleged Processing Delays Are Not Unconstitutional. .................................................................................. 19

      2.  Plaintiffs' Equal Protection and Privileges and Immunities Challenges Also Fail as a Matter of Law. ........................................................................ 20

           A. The "Right to Travel" Challenge to the Licensing Regime under the Equal Protection Clause Fails to State a Claim. ......................................... 21

           B. Repackaging the Second Amendment Claims under the Privileges and Immunities Clause Also Fails........................................................... 22

CONCLUSION............................................................................................................ 23

INTRODUCTION

The defendants in the above-captioned case move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1),(6). This case is brought by three individual plaintiffs and two organizations alleging that the "shall-issue" firearm licensing scheme in Massachusetts is unconstitutional. Plaintiffs challenge the licensing scheme as it was applied to them, alleging that "unreasonable and excessive" delays in the processing of their applications for a temporary license to carry firearms violate the Second Amendment. Complaint (Compl.) ¶¶ 151, 160. Plaintiffs also allege that certain features of the licensing regime, such as in-person interviews with first-time applicants and different periods of validity of licenses to carry firearms for residents and non-residents of Massachusetts, facially violate the Second Amendment, the Fourteenth Amendment, and the Privileges and Immunities Clause of Article IV. Compl. ¶¶ 161–163, 175–176, 180–181.

The Complaint should be dismissed in its entirety for two reasons. First, all Plaintiffs lack standing to bring this lawsuit. The individual Plaintiffs lack standing to bring a facial challenge to the licensing scheme because none allege a particularized injury—the denial of a temporary LTC. The individual Plaintiffs also lack standing to bring an as-applied challenge to the application processing times: two of them currently have active temporary licenses to carry and their claims are moot, and the third one has himself caused the delay with the processing of his application, and his self-inflicted harm is not an injury in fact traceable to Defendants. Because none of the individual Plaintiffs have standing, none of the organizational Plaintiffs have standing to sue on behalf of their members, including the individual Plaintiffs, either. Moreover, one of the organizational Plaintiffs asserting claims on its own behalf does not have standing because it has not alleged a concrete injury that it, as an organization, has suffered because of Defendants.

Second, all Plaintiffs fail to state a plausible claim. Their Second Amendment claims fail. Under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ("*Bruen*"), the Massachusetts "shall-issue" licensing scheme is presumptively constitutional, and the Complaint does not allege facts to overcome that presumption. The alleged delays in applications processing do not amount to unconstitutionally "lengthy wait times in processing license applications," *Bruen*, 597 U.S. at 38 n.9. Further, the Second Amendment imposes no obligation to provide non-residents of Massachusetts with a "grace period" extending the validity of licenses beyond their statutory prescribed expiration date, to assign a specific period of validity to a temporary license to carry, or to conduct interviews with applicants through an online platform (that technology was not even available at the time of the enactment or ratification of the Second Amendment). And, Plaintiffs' attempts to repackage their Second Amendment challenges as Equal Protection and Privileges and Immunities claims are likewise unavailing. Different levels of scrutiny under the Equal Protection Clause do not apply to the Second Amendment rights, and the right to be exempt from certain application process requirements is not integral to the maintenance and well-being of the Union under the Privileges and Immunities Clause.

## STATUTORY AND REGULATORY BACKGROUND

Massachusetts, by statute, has a "shall-issue" firearms[2] licensing regime for state residents and non-residents alike. Mass. Gen. L. c. 140, § 131(d) ( "the licensing authority shall issue [a license to carry firearms, or renewal of the same to a Massachusetts resident] only if it appears that the applicant is neither a prohibited person nor determined to be unsuitable to be issued a license

---

[2]     The term "firearm" includes "stun gun, pistol, revolver, rifle, shotgun, sawed-off shotgun, large capacity firearm, assault-style firearm and machine gun, loaded or unloaded, which is designed to or may readily be converted to expel a shot or bullet; the frame or receiver of any such firearm or the unfinished frame or receiver of any such firearm . . . ." Mass. Gen. L. c. 140, § 121.

as set forth in said section 121F"); § 131F ("A temporary license to carry firearms or feeding devices or ammunition therefor, within [Massachusetts], shall be issued by the colonel of state police, or persons authorized by him, to a nonresident . . . if it appears that the applicant is not a prohibited person and is not determined unsuitable to be issued a license as set forth in section 121F."). A license to carry firearms ("LTC") issued to Massachusetts residents under Mass. Gen. L. c. 140, § 131, entitles its holder to "purchase, rent, lease, borrow, possess and carry firearms, including large capacity firearms and ammunition therefor." Mass. Gen. L. c. 140, § 131(a). A temporary license to carry firearms ("Temporary LTC") issued to non-residents of Massachusetts under Mass. Gen. L. c. 140, § 131F, entitles its holder to "to carry firearms or feeding devices or ammunition therefor" within Massachusetts.[3] Mass. Gen. L. c. 140, § 131F.

The eligibility requirements for LTC and Temporary LTC applicants are identical in that both residents and non-residents must be neither "prohibited persons," nor determined to be "unsuitable."[4] Mass. Gen. L. c. 140, §§ 131, 131F. A "prohibited person" is a person who is statutorily disqualified from obtaining a license because, among other grounds listed in the statute, the person has been convicted of certain crimes, including felonies and violent crimes, or is currently the subject of an outstanding arrest warrant or abuse prevention order, or is or has been

---

[3]     In addition to these activities, Massachusetts non-residents may possess and carry firearms without a Temporary LTC under certain circumstances enumerated in the statute. *See generally* Mass. Gen. L. c. 140, § 129C. For example, a "nonresident who is at least 18 years of age may possess rifles and shotguns that are not large capacity or semi-automatic and ammunition therefor if the nonresident has a permit, card or license issued from their state of residence which has substantially similar requirements to those of the commonwealth for a firearm identification card." *Id.*

[4]     In addition, Massachusetts lawful residents applying for LTCs must be 21 years or older; non-residents applying for Temporary LTCs do not have to meet that age requirement. *Compare* G.L. ch. 140, § 131(d), *with* § 131F.

committed to a hospital or institution for mental illness or a substance use disorder. G.L. ch. 140, § 121F(j).

A determination of "suitability," in turn, must be based on "reliable, articulable and credible information that the applicant has exhibited or engaged in behavior that suggests that, if issued a permit, card or license, the applicant may create a risk to public safety or a risk of danger to themselves or others." Mass. Gen. L. c. 140, § 121F(k). The suitability requirement has been defined by Massachusetts courts to include conduct that, while not falling within one of the automatic statutory disqualifiers, nonetheless causes the licensing authority to conclude that the applicant would engage in violence or otherwise pose a risk to public safety if allowed to keep and carry a weapon. *See generally Commonwealth v. Marquis*, 495 Mass. 434, 454 (Mass. 2025) (suitability requirement encompasses "credible, individualized evidence that the person in question would pose a danger if armed").

The application processes to obtain LTC or Temporary LTC are similar. To obtain either license, an applicant must pay a $100 application fee and submit an application on a standard form approved by the Commissioner of the Department of Criminal Justice Information Services. Mass. Gen. L. c. 140, §§ 121F, 131, 131F. The Commissioner has approved standard application forms for residents and non-residents.[5] Upon receipt of the application, the licensing authority (a chief of police in the resident's city or town, or the Colonel of the State Police for non-residents) provides an applicant with a receipt. *Id.* For residents, a local licensing authority conducts an in-person interview with first-time applicants and, within 7 days of receipt of completed application,

---

[5]     *See* Massachusetts Resident LTC/FID/Machine Gun Application, *available at*: https://www.mass.gov/doc/massachusetts-resident-ltcfidmachine-gun-application/download; Massachusetts Non-Resident Temporary License To Carry Firearms Application, *available at*: https://www.mass.gov/doc/non-resident-license-to-carry-firearms-application-0/download.

forwards the application and the applicant's fingerprints to the Colonel of the State Police. Mass. Gen. L. c. 140, §§ 121F, 131. For non-resident first-time applicants, there is no in-person interview requirement; however, the applicant must appear in person at the Firearms Records Bureau, located in Chelsea, Massachusetts, for collection of fingerprints. Mass. Gen. L. c. 140, § 131F.[6] There is no requirement for an in-person appearance for subsequent renewal(s) of either LTCs or Temporary LTCs. Mass. Gen. L. c. 140, §§ 131, 131F.

Within 30 days of receipt of an application for either an LTC or Temporary LTC and fingerprints, the Colonel of the State Police shall "advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without [Massachusetts] and whether there is reason to believe that the applicant is disqualified from possessing the permit, card or license requested." Mass. Gen. L. c. 140, § 121F. Within 40 days of receipt of the application, the licensing authority shall "either approve the application and issue the [LTC or Temporary LTC] or deny the application and notify the applicant of the reason for such denial in writing." *Id.* At the same time, "no permit, card or license shall be issued unless the [C]olonel of the [S]tate [P]olice has certified that the information available indicates that issuing the permit, card or license is not in violation of state or federal law." *Id.*

LTCs and Temporary LTCs have different periods of validity. LTCs are valid "for a period of not more than 6 years from the date of issue." Mass. Gen. L. c. 140, § 131(e). Moreover, LTCs also have a so-called "grace period": "an expired [LTC] . . . shall remain valid for all lawful purposes if . . . the licensee . . . applied for renewal before the license or card expiration date and shall remain valid until the application for renewal is approved or denied." Mass. Gen. L. c. 140,

---

[6]     *See also* Massachusetts Non-Resident Temporary License To Carry Firearms Application, available at: https://www.mass.gov/doc/non-resident-license-to-carry-firearms-application-0/download.

§ 121F(s)(ii). Temporary LTCs "shall be valid for a period of [1] year but the [Colonel of the State Police] may renew such license if such renewal is necessary." Mass. Gen. L. c. 140, § 131F. There is no grace period for Temporary LTCs. *Id.*

STATEMENT OF FACTS

The facts of the case are drawn from the Complaint, and to the extent such facts are non-conclusory and non-speculative, they are assumed to be true only for the purpose of this motion. *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012).

Plaintiffs are three non-residents of Massachusetts ("Individual Plaintiffs") and two organizations, Second Amendment Foundation, Inc. ("SAF"), and Gun Owners' Action League ("GOAL") ("Organizational Plaintiffs"). ECF No. 1. Individual Plaintiffs seek to possess, use, and carry semiautomatic firearms and handguns in Massachusetts. Compl. ¶ 1. The Complaint asserts that Individual Plaintiffs are "responsible gun owners who possess, use, and carry firearms in their home state for self-defense and other lawful purposes". *Id.* The Complaint further alleges that Individual Plaintiffs are not "disqualified from exercising the constitutional right to keep and bear arms," and have "lawfully possessed and used firearms for lawful purposes in multiple states other than Massachusetts." *Id.* ¶¶ 16–17, 38–39, 60–61.

The Complaint asserts that Individual Plaintiffs have "sought to comply with all the requirements necessary to obtain and maintain" firearm licensure in Massachusetts. *Id.* ¶ 3.

Plaintiff Burns has been a resident of Florida since 2021; however, he spends a substantial portion of the year at his property in East Falmouth, Massachusetts, as he typically stays there between July and November each year. Compl. ¶¶ 34–37. Burns currently has an active Temporary LTC, which was issued after he filed the complaint. Affidavit of Michaela Dunne ("Dunne Aff.")

6

¶ 6.[7] Burns was first issued a Temporary LTC and has subsequently renewed it four times. Compl. ¶ 42. For one of his prior applications, his renewed Temporary LTC did not issue until almost six months after his previous Temporary LTC had expired. *Id.* ¶ 48. Burns's prior Temporary LTC before his current Temporary LTC expired on or around December 11, 2024. *Id.* ¶ 50. Burns submitted his renewal application by first-class mail on or about October 29, 2024; since that time and to the date of filing of the Complaint, Burns had received no response from the licensing authority concerning the status of his application for his current Temporary LTC, which has since issued. *Id.* ¶¶ 51, 52; Dunne Aff. ¶ 6. Burns does not allege that he intended to travel to Massachusetts after his prior LTC had expired.

Plaintiff Penta is currently a resident of New Hampshire and frequently travels to and within Massachusetts both in connection with his work and to visit family who live in Massachusetts. Compl. ¶¶ 58, 59. He currently has an active Temporary LTC. Penta has maintained a Temporary LTC in Massachusetts since 2018, which he has renewed each year since relocating to New Hampshire. Compl. ¶ 64. Penta was issued his most recent Temporary LTC on July 8, 2025. Dunne Aff. ¶ 5. This license issued 32 days after his prior Temporary LTC had expired and 95 days after Penta submitted his renewal application by first-class mail to the

---

[7]     The court may consider these additional facts presented in the affidavit as they are relevant to Defendants' claim of mootness. *Manguriu v. Lynch,* 794 F.3d 119, 121 (1st Cir. 2015) ("federal courts ordinarily must answer jurisdictional questions before tackling the merits of a case," and "[b]ecause mootness implicates a court's jurisdiction, the court can properly look to facts outside the record so long as those facts are relevant to a colorable claim of mootness"); *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 364 (1st Cir. 2001) (courts enjoy "broad authority" to consider "extrinsic evidence" when conducting mootness inquiry under Fed. R. Civ. P. 12(b)(l)).

licensing authority.[8] *Id.* ¶¶ 73, 74, 81, 82. Penta does not allege that he intended to travel to Massachusetts within the 32 days between the expiration and the renewal of his Temporary LTC.

Plaintiff Lawson is a resident of New York but spends time in Massachusetts, where he owns property that he regularly visits. Compl. ¶¶ 14–15. Lawson submitted his application for a Temporary LTC in January of 2025. *Id.* ¶ 23. Lawson had already completed a firearm safety course in 2022. *Id.* ¶ 18. On or about January 29, 2025, the Firearms Records Bureau (FRB) confirmed receipt of the application and scheduled his in-person "interview appointment" for June 9, 2025, the "earliest available" date, at the FRB office in Chelsea, Massachusetts. *Id.* ¶ 24. The FRB email requested that Plaintiff Lawson confirm the appointment, which he did on January 31, 2025. *Id.* ¶¶ 25–27.

However, Lawson was unable to attend his confirmed appointment on June 9, 2025. Compl. ¶ 29. On July 11, 2025, approximately a month after his missed appointment, Lawson emailed the FRB requesting a new appointment. *Id.* ¶ 30. On or about July 14, 2025, the FRB confirmed that his appointment had been rescheduled to October 20, 2025, the "earliest available" date. *Id.* ¶¶ 31–32. The appointment was held as scheduled on October 20, 2025; upon review of Mr. Lawson's application, FRB discovered a criminal charge that Lawson had not disclosed on his application form. Dunne Aff. ¶ 7.

All three Individual Plaintiffs are members and supporters of both Organizational Plaintiffs, SAF and GOAL. Compl. ¶¶ 33, 57, 85. SAF is a non-profit educational foundation

---

[8]    The Complaint also alleges that Penta submitted his initial application for a Temporary LTC in or around December of 2017, but the LTC was not issued until April of 2018, some four months later. Compl. ¶ 71. It alleges that for one of Penta's subsequent renewal applications a few years later, the renewed Temporary LTC did not issue until almost two months after the expiration date for the previous Temporary LTC, even though Penta had submitted the renewal application two to three months in advance of the expiration. *Id.*

incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington. *Id.* ¶ 86. SAF's purposes include education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control. *Id.* ¶ 87. SAF sues both on behalf of itself and on behalf of its individual members, including Individual Plaintiffs. *Id.* GOAL is a non-profit organization with a principal place of business in Massachusetts. *Id.* ¶ 93. Its stated purposes include restoring, protecting, and defending the Second Amendment and its exercise in the Commonwealth of Massachusetts through legislative lobbying efforts, legal action, training, and education. *Id.* ¶ 94. GOAL sues on behalf of its members, including Individual Plaintiffs. *Id.* ¶ 95.

On August 13, 2025, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against the Massachusetts Attorney General, the Secretary of the Executive Office of Public Safety and Security of Massachusetts, the Superintendent of the Massachusetts State Police, and the Commissioner of the Massachusetts Department of Criminal Justice Information Services in their official capacities. ECF No. 1.

The Complaint includes three counts. Count I alleges that the Temporary LTC licensing scheme violates the Second Amendment as applied to Plaintiffs because of the "significant delays" in the processing of applications for Temporary LTCs. Compl. ¶¶ 151, 156. Count I also alleges that certain features of the firearms licensing scheme for non-residents (the absence of grace period, the period of validity of Temporary LTCs, the in-person interview requirement, and the "live-fire" component of the firearm safety training requirement) facially violate the Second Amendment. Compl. ¶ 163. Counts II and III allege that the same features of the licensing scheme, except for the live-fire training requirement, facially violate, respectively, the Fourteenth

Amendment's Equal Protection Clause because they burden the right to travel, and Article IV's Privileges and Immunities Clause. Compl. ¶¶ 169–70, 176–77, 179–81.

ARGUMENT

I. THIS COURT LACKS SUBJECT-MATTER JURISDICTION AND THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1).

Individual Plaintiffs lack standing to bring facial Second Amendment, Equal Protection and Privileges and Immunities challenges to certain features of the firearms licensing scheme, Compl. ¶¶ 162, 169, 172, 176, 179–181 (Counts I, II & III), because they do not allege a particularized injury— a denial of a Temporary LTC or futility of a future license application. Individual Plaintiffs also lack standing to bring an as-applied Second Amendment challenge to the processing times for Temporary LTC applications, Compl. ¶¶ 156, 160, 166: two of them (Burns and Penta) currently have a Temporary LTC and the issue of application processing times is moot as to them, and Lawson has himself caused the delay with the processing of his Temporary LTC application, and his self-inflicted harm does not confer standing. Because the Individual Plaintiffs do not have standing to sue, the Organizational Plaintiffs do not have standing to sue on behalf of Individual Plaintiffs or their members either, and SAF further lacks standing to sue on behalf of itself. The Court should dismiss the Complaint for lack of subject matter jurisdiction.

1. Standing, Mootness, and Ripeness.

A plaintiff's standing, as well as concepts of mootness and ripeness, are matters of subject-matter jurisdiction that are properly asserted under Fed. R. Civ. P. 12(b)(1). *Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020) (standing); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) (mootness and ripeness). To establish standing to bring a claim under Article III of the Constitution, a plaintiff must show that: (1) they have suffered an "injury in fact"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) the injury is likely to be

10

"redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As for the first two standing requirements, a self-inflicted injury "fails the second standing prerequisite, traceability," because "if the plaintiff caused his own injury, he cannot draw a connection between that injury and the defendant's challenged conduct." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020). Moreover, "self-inflicted injuries are not even injuries in fact." *Id.*, and cases cited.

In addition to the standing requirement, "'[a]n actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *American Civil Liberties Union of Massachusetts v. US. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("*ACLUM*") (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir.2003)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *D.H.L. Associates, Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). Where a complaint seeks injunctive relief but there is "no ongoing conduct left for the court to enjoin," the case is moot. *Id.* at 53 (citations omitted). Similarly, when events transpire after the case is filed that "disable a federal court from granting effective relief," the case is moot. *Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015). And where a case seeks declaratory relief, but intervening events have transpired that would render the court's declaration purely advisory, the case is moot because "federal courts 'are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.'" *ACLUM*, 705 F.3d at 53 (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)).

A justiciable claim must also be ripe for review. Ripeness "has roots in both the Article III case or controversy requirement and in prudential considerations." *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) (quoting *Mangual*, 317 F.3d at

49). Ripeness doctrine "seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "'[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of' the judicial relief sought." *Id.* (quoting *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016)).

2. Plaintiffs Lack Standing to Bring a Facial Challenge Against the "Shall-Issue" Licensing Regime in Massachusetts.

None of the Plaintiffs have standing to facially challenge the Temporary LTC licensing scheme. To challenge a firearm permitting law, "a person must either have applied for and been denied a license or make a 'substantial showing' that his or her application 'would have been futile.'" *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020) (quoting *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012)), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022). *See also Hightower v. City of Bos.*, 693 F.3d 61, 70 (1st Cir. 2012) (quoting *Parker v. District of Columbia*, 478 F.3d 370, 376 (D.C. Cir. 2007)) ("'We have consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury.'").

Here, none of the Individual Plaintiffs has alleged that his Temporary LTC license application has been denied. To the contrary, Penta and Burns have been issued Temporary LTCs, and Lawson's Temporary LTC application is currently pending before the licensing authority because he missed his fingerprinting appointment in June 2025. Compl. ¶¶ 31–32, 42, 64, 81; Dunne Aff. ¶¶ 5–7. Accordingly, none of the Individual Plaintiffs has standing to bring a facial challenge against the Temporary LTC licensing scheme on any grounds, because none of them

has suffered a concrete, particularized injury conferring standing to bring such challenge. *Libertarian Party of Erie County v. Cuomo*, 970 F.3d at 116.

While Burns and Penta also allege that each of them "remains at real risk of repeatedly being trapped in a state of legal purgatory during the period of lapse between the expiration and renewal date each year," Compl. ¶¶ 56, 83, these speculative allegations do not establish that their possible subsequent applications to renew their Temporary LTCs "would be futile." *Libertarian Party of Erie County v. Cuomo*, 970 F.3d at 116. *See also id.* at 122 (speculative allegations are "insufficiently concrete to constitute injury-in-fact"). If anything, the Complaint, read in the light most favorable to Plaintiffs, establishes the opposite: both Burns and Penta allege that they have been issued and renewed their Temporary LTCs in the past, and there are no allegations in the Complaint that Individual Plaintiffs' future Temporary LTC applications will be denied. Compl. ¶¶ 42, 64. Moreover, claims based on these allegations are unripe for review because it is "highly uncertain" whether, in several months and up to one year, the processing of Individual Plaintiffs' applications would be delayed, and if so whether it will cause any cognizable harm. *See Reddy*, 845 F.3d at 504 (affirming dismissal on ripeness grounds of a pre-enforcement challenge to a statute permitting reproductive health care facilities to demarcate "buffer zones" because "the possible establishment and contours or such a future zone are highly uncertain").

Because none of the Individual Plaintiffs has standing to bring a facial challenge to the firearms licensing scheme, the Organizational Plaintiffs, of which Individuals Plaintiffs are members, lack standing as well. *Capen v. Campbell*, 134 F.4th 660, 667 (1st Cir. 2025) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)) ("[P]laintiffs claiming an organizational standing [must] identify members who have suffered the requisite harm."). Nor does one of the Organizational Plaintiffs, SAF, have standing to bring this lawsuit on its own behalf, Compl. ¶ 87,

13

because it does not allege a particularized injury traceable to Defendants' conduct that SAF has suffered. In this respect, the Complaint only alleges that "[t]his Court's interpretation of the Second Amendment directly impacts SAF's organizational interests," *id.*, but that is plainly insufficient to establish standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization. A plaintiff must show far more than simply a setback to the organization's abstract social interests.") (citations omitted) (quotation marks omitted).

Because none of the Plaintiffs have standing to bring a facial challenge to the Temporary LTC licensing scheme, Counts II and III of the Complaint, as well Count I as it pertains to the facial challenge, should be dismissed.

### 3. Plaintiffs Lack Standing to Bring an As-Applied Challenge.

All Plaintiffs also lack standing to challenge the processing times of Temporary LTC applications as applied to Individual Plaintiffs. Burns and Penta have their Temporary LTC applications approved, and therefore, for them the as-applied challenge is moot. *See ACLUM*, 705 F.3d at 52. The injunctive relief commensurate with an as-applied challenge—ordering Defendants to process Burns's and Penta's applications—would not be effective, and any declaration that the alleged past delays constituted a constitutional violation would be a pure advisory opinion. *See id.* at 52–54; *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 6–7, 9 (1st Cir. 2021) (quoting *ACLUM*, 705 F.3d at 54) (no "'substantial controversy of sufficient immediacy and reality' exists 'to warrant the issuance of a declaratory judgment'" where Governor's COVID-19-related order was superseded by another order, and Governor had lifted COVID-19 state declaration of emergency).

As to Lawson, his Temporary LTC application is currently pending before the licensing authority solely because of Lawson's own dilatoriness, failure to attend the fingerprinting appointment in June 2025, and failure to disclose the relevant information on the application form. Compl. ¶¶ 29–31; Dunne Aff. ¶ 7. Therefore, the alleged delay in processing of Lawson's application is a self-inflicted injury, which does not confer standing. *See, e.g.*, *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (plaintiff who has chosen not to follow administrative processes "cannot demonstrate an injury sufficient to confer standing"). *See generally Buchholz*, 946 F.3d at 866, and cases cited ("[I]f the plaintiff caused his own injury, he cannot draw a connection between that injury and the defendant's challenged conduct. A self-inflicted injury, by definition, is not traceable to anyone but the plaintiff.").

Because none of the Individual Plaintiffs has standing to bring an as-applied challenge to the processing times under the Massachusetts licensing scheme, none of the Organizational Plaintiffs has standing to bring that challenge as well. *See supra* at 13–14. Count I of the Complaint should be dismissed for lack of subject matter jurisdiction.

## II. Plaintiffs Fail to State a Plausible Claim, and the Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6).

Even if Plaintiffs had standing and their claims were not moot and/or unripe, the Complaint should still be dismissed for failure to state a claim. Once the Court strips away the speculation and conclusory statements in the Complaint—as it must on a motion to dismiss under Rule 12(b)(6), see *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 & n.3 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))—what remains fails, as a matter of law, to state a plausible claim. Plaintiffs failed to rebut the presumption of constitutionality of the Massachusetts "shall-issue" regime, and their

attempts to repackage Second Amendment claims as Equal Protection or Privileges and Immunities violations are unavailing.

      1.   <u>Under the Second Amendment, Plaintiffs Failed to Rebut the Presumption of Constitutionality of the Massachusetts "Shall-Issue" Firearm Licensing Regime</u>.

      *A. Presumptive Constitutionality of the Massachusetts Licensing Regime.*

Under *Bruen*, the "shall-issue" firearms licensing regimes, like the one in Massachusetts, are presumptively constitutional. *Bruen*, 597 U.S. at 39 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes"); *id*. at 80 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("[S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice."). *See also Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222 (4th Cir. 2024), cert. denied, 145 S. Ct. 1049 (2025) ("[I]n accord with the Supreme Court's 'shall-issue' discussion, we hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework.").

"In addition to the semantic fact that [Mass. Gen. L. c. 140,] § 131F employs the phrase 'shall be issued,' in substance the [Massachusetts] nonresident firearm licensing scheme displays all three hallmarks of a 'shall issue' regime." *Marquis*, 495 Mass. at 455. That is because "any nonresident who is neither a prohibited person nor determined unsuitable pursuant to the criteria and procedures outlined in § 131 'shall be issued' a license to carry. Applicants need not . . . articulate any purpose for which they seek to possess a firearm outside of their home or place of business." *Id.* Moreover, because "the only statutorily permissible ground on which to withhold or revoke a license from a nonprohibited person is a determination that the person would pose 'a

risk to public safety or a risk of danger to self or others' if armed, G. L. c. 140, § 131(d), the [Massachusetts] nonresident firearm licensing scheme is designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* at 455–56 (cleaned up). Finally, "the statutory criteria for 'unsuitability' appropriately guide the licensing authority by means of narrow, objective, and definite standards." *Id.* (cleaned up).

Because the Temporary LTC licensing scheme is presumptively constitutional, Plaintiffs who bring a facial challenge against it under the Second Amendment must rebut that presumption of constitutionality. *Maryland Shall Issue*, 116 F.4th at 223 ("[I]f a plaintiff fails to rebut this presumption of constitutionality, the plaintiff's challenge to the 'shall-issue' licensing law fails at step one [under the *Bruen* framework], with no requirement to conduct a historical analysis under step two."). In addition, a facial challenge to the LTC licensing scheme is "[t]he 'most difficult challenge to mount successfully,' because it requires a [plaintiff] to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Here, Plaintiffs failed to carry out that burden, and their facial Second Amendment challenge fails as a matter of law and should be dismissed.

### B. Plaintiffs' Facial Second Amendment Challenges to the Massachusetts Licensing Regime Fail as a Matter of Law.

Plaintiffs allege that under the Second Amendment, it is "minimally necessary" to ensure that Temporary LTCs have the same 6-year period of validity as LTCs issued to the Massachusetts residents, that the same "grace period" under Mass. Gen. L. c. 140, § 121F(s)(ii) must apply to both LTCs and Temporary LTCs, that non-residents should be able to satisfy the "in-person" interview requirement through an online platform, and that non-residents should be able to satisfy the "live-fire" component of firearm safety training in their home states. Compl. ¶ 163. But there

is nothing in the text, or the original public meaning, *see Bruen*, 597 U.S. at 34, or the original public purpose of the Second Amendment, *see Rahimi*, 602 U.S. at 692, even remotely suggesting that the Constitution commands that licenses to carry a firearm must, as a matter of constitutional right, have a certain period of validity or be valid for a certain period of time after they expire. Accordingly, the 1-year period of validity of Temporary LTCs with no grace period does not "infringe" on Plaintiffs' Second Amendment rights. The same is true with respect to in-person interviews and firearm safety courses. *See Bruen*, 597 U.S. at 39 n.9 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)) (presumptively constitutional "shall-issue" regimes "often require applicants to undergo a background check or pass a firearms safety course [and] are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'"). *See also Giambalvo v. Suffolk Cnty., New York*, No. 23-208-CV, 2025 WL 2627368, at *9 (2d Cir. Sept. 12, 2025) ("[W]e conclude that the in-person interview requirement is likely to pass constitutional muster. . . . The purpose of that requirement is to provide the licensing officer with a face-to-face opportunity to assess the applicant's character—that is, their potential dangerousness. . . . [D]uring the Founding era, at least six colonies (Massachusetts, Pennsylvania, Maryland, North Carolina, Virginia, and New York) required individuals suspected of disloyalty to appear in person to swear an oath before a justice of the peace or face disarmament. The evident purpose of these requirements was for the justices of peace to ascertain the candor of the individual and assess whether they might continue to pose a danger to the revolutionary cause. We have little trouble concluding that the in-person interview requirement is relevantly similar, both in the how and why, to these established and representative gun regulations within our Nation's history and tradition.") (citations omitted). Because none of the features of the Temporary LTC licensing scheme infringe the Plaintiffs' Second Amendment rights, Plaintiffs failed to rebut

the presumption of the constitutionality of the licensing scheme, and their facial Second Amendment challenge should be dismissed.

### C.  Plaintiff's As-Applied Second Amendment Challenge Also Fails as a Matter of Law Because the Alleged Processing Delays Are Not Unconstitutional.

Plaintiffs' as-applied Second Amendment challenge to the application process also fails to state a plausible claim because the alleged delays are constitutionally permissible. Individual Plaintiffs claim that their Temporary LTC applications were processed with "excessive and unreasonable" delays. Compl. ¶¶ 27–31, 47–52, 74–81, 151–160. *See Bruen*, 597 U.S. at 39 n.9 ("[W]e do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."). The law, however, does not support the allegations that the processing times were excessive or unreasonable.

Under the statute, the processing of applications for Temporary LTCs takes 40 days, Mass. Gen. L. c. 140, § 121F(a), which is comparable to, or less than, the wait times imposed by several other states' licensing statutes, which were cited in *Bruen* as examples of constitutional shall-issue licensing regimes, 597 U.S. at 13 n.1. *See, e.g.,* Ariz. Rev. Stat. § 13-3112(H) (75 days); Fla. St. § 790.06(6)(c) (90 days); Ill. Comp. St., ch. 430, § 66/10(e) (90 days); Okla. St., Tit. 21, § 1290.12(A)(13) (60–90 days); Va. Code § 18.2-308.04(C) (45 days). *See also Giambalvo* at *12, *13 ("[N]othing in the Second Amendment prescribes a bright-line 30-day time limit [to process firearms license applications]. . . . *Bruen* only greenlighted constitutional challenges to processing delays that are sufficiently 'lengthy' such that they in effect 'deny ordinary citizens their right to public carry.' . . . [However,] application processing times of up to two to three years likely constitute 'lengthy wait times' that effectively 'deny ordinary citizens their right to public carry.'") (citations omitted); *California Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745

F. Supp. 3d 1037, 1054–55 (C.D. Cal. 2024) ("applications pending for eighteen months or more cross[] the line").

Here, according to the Complaint, Plaintiff Penta's most recent renewal application was processed within 95 days from the date of submission (April 10, 2025) to the date of issuance a Temporary LTC (July 14, 2025), Compl. ¶¶ 74, 81. Lawson's in-person interview was scheduled in 131 days after his application; when Lawson missed that appointment, a new interview date was scheduled in 101 days after his request. Compl. ¶¶ 24, 30, 31. And Burns's application was processed within 287 days. Dunne Aff. ¶ 6. While these processing times are longer than specified in Mass. Gen. L. c. 140, § 121F, they are, for Lawson and Penta, comparable to the processing times allowed in other States with "shall-issue" regimes and, for all Individual Plaintiffs, are nowhere near the delays considered unconstitutional by other courts. *See Maryland Shall Issue*, 116 F.4th at 227 (rejecting an argument that "any temporary delay" constitutes an infringement of Second Amendment rights); *McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) ("Our law is plain as can be that some amount of time for background checks is permissible."). Accordingly, they are not unconstitutionally "lengthy" delays, and Plaintiffs' as-applied Second Amendment challenge to the processing times also fails.

    2.   <u>Plaintiffs' Equal Protection and Privileges and Immunities Challenges Also Fail as a Matter of Law</u>.

Because Plaintiffs cannot state a plausible Second Amendment claim, they also cannot repackage that claim under the Equal Protection or Privileges and Immunities Clauses. Compl. ¶¶ 169, 172, 176, 179–181. These claims also fail as a matter of law and should be dismissed.

A. *The "Right to Travel" Challenge to the Licensing Regime under the Equal Protection Clause Fails to State a Claim.*

Plaintiffs state that the "shall-issue" licensing regime in Massachusetts violates their "right to travel" under the Equal Protection Clause, because they must either "suffer disarmament, arrest and/or prosecution" by entering the Commonwealth with an unlicensed firearm or "yield Second Amendment rights." Compl. ¶ 171. However, "repackaging a claim that is more appropriately brought under a different constitutional provision—here the Second Amendment—as an equal protection claim will not usurp the settled legal framework that has traditionally applied." *Culp v. Raoul*, 921 F.3d 646, 658 (7th Cir. 2019), cert. denied, 141 S. Ct. 109 (2020). Here, the "shall-issue" regime does not infringe on the Plaintiffs' Second Amendment rights, *see supra* at 16–20, the constitutional dilemma alleged by Plaintiffs does not exist, and the Equal Protection claim fails.

Likewise unavailing is the Plaintiffs' attempt to apply a heightened level of scrutiny to the Massachusetts firearms licensing scheme. Compl. ¶ 173. To begin, the Supreme Court has emphatically rejected the proposition that the Second Amendment rights should be analyzed under the levels of scrutiny framework applicable under the Fourteenth Amendment. *Bruen*, 597 U.S. at 19–24 (emphasizing historical approach and rejecting "means-end scrutiny"). Moreover, even assuming the means-end scrutiny analytical framework did apply here, the differences in the periods of validity of LTCs and Temporary LTCs easily survive the rational basis review. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."). "One implication of the license duration differential is that nonresidents are obligated to apply more frequently than residents. This affords the . . . licensing authority more frequent opportunities to verify the continued eligibility of nonresidents for a

firearms license. Insofar as it may be more difficult to reliably monitor nonresidents' continued compliance with the substantive requirements of the [Massachusetts] firearm licensing scheme, having shorter license durations and concomitantly more frequent opportunities to verify nonresident suitability and prohibition status stands in a rational relationship to the [State's] legitimate end of equally verifying the eligibility of all firearms license applicants regardless of their State of residency." *Marquis*, 495 Mass. at 467–68. *See also Culp*, 921 F.3d at 655 ("The State's enforcement authority necessarily must bring with it a practical way of monitoring the ongoing fitness of individuals licensed to carry a firearm on a public street."). The Temporary LTC licensing scheme in Massachusetts does not violate the Equal Protection Clause.

> B.  *Repackaging the Second Amendment Claims under the Privileges and Immunities Clause Also Fails.*

The Privileges and Immunities Clause of Article IV only prohibits the distinctions between the residents and nonresidents of individual States that "hinder the formation, the purpose, or the development of a single Union of those States." *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 383 (1978). *See also id.* (permissible distinctions include those that "merely reflect the fact that this is a Nation composed of individual States"). In-person interviews in the LTC application process and periods of validity of firearms licenses are not vital to the preservation of the Union. Accordingly, these distinctions do not violate the Privileges and Immunities Clause. *Id.* at 371 (the "category of rights protected by the Privileges and Immunities Clause" only includes "those 'privileges' and 'immunities' bearing upon the vitality of the Nation"). See also *Culp*, 921 F.3d at 657 (7th Cir. 2019) ("[W]e are . . . unaware of a decision holding that a privilege of citizenship includes a right to engage in the public carry of a firearm, or, even more specifically, the right to carry a concealed firearm in another state. Under the law as it presently stands, it seems difficult to conclude that such a right, if it exists, is essential to the ongoing vitality of the nation.").

Therefore, the Privileges and Immunities claims also fail as a matter of law and should be dismissed.

CONCLUSION

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,

ANDREA JOY CAMPBELL, in her official capacity as the Massachusetts Attorney General; SUSAN TERREY, in her official capacity as the Interim Secretary of the Executive Office of Public Safety and Security of Massachusetts; GEOFFREY D. NOBLE, in his official capacity as the Superintendent of the Massachusetts State Police; and JAMISON R. GAGNON, in his official capacity as the Commissioner of the Massachusetts Department of Criminal Justice Information Services,

by their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ *Konstantin Tretyakov*,
Konstantin Tretyakov
BBO No. 698430
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2827
konstantin.n.tretyakov@mass.gov

Date: November 7, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document, filed through the Court's ECF system on November 7, 2025, will be sent electronically to registered participants and that copies will be sent to non-registered participants by mail.

/s/ <u>*Konstantin Tretyakov*</u>
Konstantin Tretyakov
Assistant Attorney General

Dated: November 7, 2025

24